**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 9:15-CV-80073-ROSENBERG/HOPKINS**

ADT & ADT US HOLDINGS, INC.,

      Plaintiffs,

v.

ALARM PROTECTION LLC, et al.,

      Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

This matter is before the Court on Defendants' Motion for Partial Summary Judgment [DE 232]. The Motion has been fully briefed. For the reasons set forth below, the Motion is granted as to Defendants' arguments on the issue of attorney's fees and denied in all other respects.

## I.     BACKGROUND[1]

This case is about door-to-door sales. Defendants are a collection of companies, operating under the name of "Alder," that target Plaintiffs' customers' houses. At its core, this is case about how Defendants train their sales agents and how those agents conduct themselves. Defendants' position is that they train their sales agents to be honest and forthright but, from time to time, individual agents may utilize aggressive sales tactics or deviate from their training. Plaintiffs' position is that Defendants' sales agents are intentionally deceptive—not just because of their individual preferences, but because of Defendants' training programs.

The disputes between the parties have a long procedural history. Originally, in case

---

[1] Defendants' Motion for Summary Judgment raises primarily issues of law. To the extent facts in the record are relevant to the Court's analysis, the Court addresses those facts in the analysis section, below. The basic allegations, undisputed facts, and procedural history of this case are set forth here for background information purposes only.

12-CV-80898 ("*ADT I*"), the parties litigated whether Plaintiffs' trademark and Defendants' trademark were similar enough to generate confusion in the mind of consumers. Defendants won that lawsuit after a trial by jury. Both parties appealed, and the appellate court ultimately held that the jury's verdict in favor of the Defendants should stand.

The parties' disputes were not limited to the possibility of confusion with their respective trademarks. Plaintiffs also believed that Defendants' sales practices were deceptive and, as a result, the instant suit was filed prior to the *ADT I* trial. While *ADT I* was pending on appeal, this case was stayed. After the appellate court's decision in *ADT I*, this case resumed. Before the Court is Defendants' Motion for Partial Summary Judgment on the issue of Plaintiffs' theory for damages.

Plaintiffs, ADT LLC and ADT US Holdings, Inc. (commonly referred to as "ADT"), filed this lawsuit alleging that Defendants train their sales agents to sell Defendants' electronic security services to Plaintiffs' customers under the guise that the agents are affiliated with Plaintiffs. Plaintiffs' Third Amended Complaint alleges unfair competition under the Lanham Act, 15 U.S.C. § 1125(a) (Count I), and common law unfair competition (Count II). Plaintiffs seek a permanent injunction barring further use of deceptive sales practices; compensatory damages; an accounting of Defendants' profits; punitive damages; and attorney's fees and costs incurred by Plaintiffs in bringing this suit.

Plaintiffs assert that Defendants target Plaintiffs' customers by identifying houses with Plaintiffs' signs in the yard. Plaintiffs contend that Defendants' agents use deceptive sales pitches that mislead Plaintiffs' customers into believing that the agents represent, or are otherwise affiliated with, Plaintiffs. According to Plaintiffs, the purpose of these pitches is to trick Plaintiffs'

customers into believing that Plaintiffs have an existing business relationship with the agents. The agents then get the customers to sign contracts with Defendants based on the mistaken belief that they are receiving an upgrade to their alarm system (Plaintiffs' alarm system).

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247-48). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247-48).

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x

819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Instead, "[t]he non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof."  *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  Accordingly, the non-moving party must produce evidence, going beyond the pleadings, to show that a reasonable jury could find in favor of that party.  *See Shiver*, 549 F.3d at 1343.

### III.    ANALYSIS

Defendants' Motion for Summary Judgment seeks a ruling from this Court on the issue of damages.[2]  Defendants argue that Plaintiffs' request for royalty damages is improper as a matter of law.  Defendants similarly argue that Plaintiffs' request for compensatory damages (determined by market value), request for goodwill and reputational damages, request for punitive damages, and request for attorney's fees are improper as a matter of law.  The Court addresses each category of damages separately below.

### A.  **Plaintiffs' Request for Royalty Damages**

Plaintiffs seek royalty damages from Defendants because it is Plaintiffs' contention that customer accounts have been essentially stolen from Plaintiffs' dealers and taken over by Defendants.  Plaintiffs therefore seek to recover from Defendants compensation akin to the compensation Plaintiffs would have otherwise received from their dealers had the customers not been transferred to Defendants.  Defendants argue these damages are improper for many reasons: royalties are not recoverable pursuant to Plaintiffs' claim as a matter of law, Plaintiffs' royalty damages are speculative, Plaintiffs should be judicially estopped from seeking royalty damages,

---

2 The Court concludes that a motion for summary judgment seeking this sort of relief is proper under the Federal Rules of Civil Procedure.  *See* DE 293 at 1-2; *Black v. Kerzner Ltd.*, 958 F. Supp. 2d 1347 (S.D. Fla. 2013).

and Plaintiffs should be sanctioned under the Federal Rules of Civil Procedure through exclusion of Plaintiffs' royalty damages theory. The Court addresses each of these arguments in turn, however, the Court first addresses two central premises at the heart of many of Defendants' arguments on this issue.

    1.  <u>Premises Underpinning Defendants' Arguments on the Issue of Royalty Damages</u>

Two central premises are at the heart of many of Defendants' arguments. Defendants' first premise encompasses several different points. Defendants contend that there are no allegations of trademark infringement in this case and, as a result, (i) Plaintiffs may not utilize any damages theory that in turn requires trademark infringement, (ii) lost profit damages require trademark infringement, and (iii) Plaintiffs therefore cannot pursue lost profits. Defendants' second premise is that Plaintiffs do not utilize a royalty as part of their business model and thus Plaintiffs may not utilize any damages theory that involves a royalty. Each of these premises underpins the theme of Defendants' arguments against Plaintiffs' royalty damages theory. Each of these premises is incorrect.

First, with respect to whether there are allegations of trademark infringement in this case, this is an issue Defendants have developed in a confusing manner. What Plaintiffs have alleged is that Defendants have violated the Lanham Act, 15 U.S.C. § 1125(a). Section 1125, which is entitled "False designations of origin, false descriptions, and dilution forbidden," reads as follows:

> Any person who, on or in connection with any goods or services, or any container for goods, **uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—**
>
> **(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or**

**as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person**, or

**(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

(emphasis added). Plaintiffs have alleged that Defendants have confused Plaintiffs' customers by falsely affiliating themselves with Plaintiffs. DE 174 at 32. Colloquially, Plaintiffs' cause of action is classified as a "false affiliation" claim. The Lanham Act provides for an award of loss profits when the Act is violated. 15 U.S.C. § 1117(a). A false affiliation claim is, of course, a cause of action under the Lanham Act. Plaintiffs have prayed for an award of lost profits. DE 174 at 36. Lost profits may be awarded under the Lanham Act for, *inter alia*, an unjust enrichment caused by a violation of 15 U.S.C. § 1125(a), which Plaintiffs have alleged here; a plaintiff need not show diverted sales in order to obtain lost profits. *Optimum Techs., Inc. v. Home Depot, Inc.*, 217 F. App'x 899, 902 (11th Cir. 2007); *Maltina Corp. v. Cawy Bottling Co.*, 613 F.2d 582, 584-85 (5th Cir. 1980). An unjust enrichment occurs when a defendant sells "by tapping into the reputation and goodwill" of the plaintiff. *Howard Johnson Co. v. Khimani*, 892 F.3d 1512, 1521 n.9 (11th Cir. 1999). Plaintiffs have so alleged. *See generally* DE 174. Thus, regardless of whether Plaintiffs have brought "a trademark infringement claim" as Defendants characterize it, Plaintiffs have brought a claim under the Lanham Act which entitles them to seek lost profits.[3]

---

3 Plaintiffs argue that any claim under the Lanham Act qualifies as a trademark infringement claim. *See* DE 293 at 7. The Court need not delve into that specific nuance for the reasons set forth above.

The Court therefore rejects any argument by Defendants that Plaintiffs' Lanham Act claim cannot seek lost profits (in the form of lost royalties) as a matter of law.

Second, with respect to whether Plaintiffs utilize a royalty as part of their business model, Defendants' argument turns on its own myopic view of discovery—a view which glosses over the particulars of Plaintiffs' position. Witnesses for Plaintiffs admitted "there is no royalty payment as between dealers and ADT." DE 263 at 3. Plaintiffs admit that they do not utilize a royalty payment as part of their business model, *as the term royalty is generally used*. *See* DE 292 at 3; *Royalty*, Black's Law Dictionary (10th ed. 2013) ("Royalties are often paid per item made, used or sold, or per time elapsed."). What Defendants essentially ignore is Plaintiffs' true position. Plaintiffs' position is that while they do not utilize a standard royalty as part of their income model, Plaintiffs utilize a method of income, established by contract with its dealers, that, when analyzed economically, is the functional equivalent of a royalty. DE 292 at 3. Plaintiffs' position is supported by expert testimony. *Id.* Thus, regardless of whether Plaintiffs utilize a royalty in the prototypical sense, it is Plaintiffs' position, supported by expert testimony, that (i) they utilize the economic functional equivalent of a royalty and (ii) they must be compensated under that theory to be made whole. The Court therefore rejects any argument by Defendants that Plaintiffs cannot seek royalty damages as a matter of law because they do not label their income stream as "a royalty." Instead, Plaintiffs' business model—and whether Plaintiffs charge their dealers the economic functional equivalent of a royalty—is an evidentiary issue to be argued at trial.

In conclusion, it is Plaintiffs' position that they are entitled to lost profits under the Lanham Act, and it is Plaintiffs' position that in order to be made whole, they must be paid the functional equivalent of a royalty and Defendants must pay for the customers they have mislead away from

Plaintiffs by paying the same amount, under the same system, that Plaintiffs' own dealers would pay to Plaintiffs. It is through this lens that the Court examines Defendants' various arguments on the issue of royalty damages.

### 2. The Availability of Royalty Damages for Plaintiffs' Lanham Act Claim

Defendants argue that a royalty is an impermissible damages theory when a plaintiff has shown no intention to license a trademark. *See, e.g.*, *A&H Sportswear Co., Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197 (3d Cir. 1999) ("Even when the courts have awarded a royalty for past trademark infringement, it was most often for continued use of the product beyond authorization, and damages were measured by the license the parties had or contemplated."); *QS Wholesale, Inc. v. World Mktg., Inc.*, No. 12-CV-0451, 2013 WL 1953719, at *4 (C.D. Cal. May 9, 2013) ("Because of the 'reasonable certainty' requirement, reasonable royalties are most often granted in a trademark context where the parties had a prior licensing arrangement, or where the plaintiff previously had engaged in the practice of licensing the mark to a third party."); *Trovan Ltd. v. Pfizer*, No. CV-98-00094, 2000 WL 709149, at *16 (C.D. Cal. May 24, 2000). As an initial matter, the Court is not persuaded that any of the authority in Defendants' Motion is binding on this Court for the proposition that royalty damages are *only* permitted when a trademark is licensed to third parties. However, even if the Court were to assume, *arguendo*, that the authority relied upon by Defendants is persuasive or binding, the reasoning of Defendants' authority does not apply here. As discussed above, it is Plaintiffs' position that it *does* license the use of its trademark to third parties in exchange for *the functional equivalent* of a royalty. *See* DE 292 at 3. Cases such as *Trovan* decline to permit royalties as a measure of damages because, when the trademark has never been licensed, the use of royalty damages would result in essentially hypothetical,

speculative damages. *Trovan*, 2000 WL 709149 at *16. Here, Plaintiffs are not seeking compensation from a hypothetical system—their position is that they are seeking to recover damages from Defendants according to the same economic system by which revenue is obtained—past and present—from their dealers. *See* DE 292 at 3. That system licenses dealers to use Plaintiffs' trademark in exchange for the functional equivalent of a royalty—if Plaintiffs' evidence on that issue is credited by a jury. *Id.* In the Eleventh Circuit, "The use of lost royalties to determine the actual damages incurred by the victim of trademark misuse is well established [in this circuit]." *Howard Johnson Co., Inc. v. Amir Khimani, Maralak, Ltd.*, 892 F.2d 1512, 1519-20 (11th Cir. 1990). The Court therefore finds Defendants' arguments unpersuasive on this point.

3. <u>Whether Plaintiffs' Royalty Damages Theory is Speculative</u>

Defendants next argue that Plaintiffs' royalty damages theory is speculative. Defendants press this argument on several grounds: (i) Plaintiffs have never shown any intent to license its trademark to *competitors*, (ii) Plaintiffs cannot show a rational relationship between the royalties Defendants would theoretically pay (should Plaintiffs prevail) and the scope of Defendants' use of the trademark, and (iii) Plaintiffs cannot show loss of sales as to any non-testifying customers. None of these arguments have merit.

With respect to Plaintiffs' lack of intent to license its trademark to competitors, this argument strains common sense. It is unsurprising that Plaintiffs have no desire to permit direct competitors to use its name and identity, but Plaintiffs do license the use of their mark to hundreds of authorized dealers. As discussed above, the operative question is whether Plaintiffs' damages theory is speculative. Plaintiffs have evidence to argue their theory is not speculative—it is based upon the relationship Plaintiffs currently enjoy with their dealers by contract. DE 292 at 3.

"Under the Lanham Act, royalties normally received for the use of a mark are the proper measure of actual damages for the misuse of the mark." *Jackson v. Grupo Indust. Hotelero, S.A.*, No. 07-22046, 2009 WL 8634834, at *9 (S.D. Fla. Apr. 29, 2009). That is all Plaintiffs are seeking. To the extent Defendants argue that Plaintiffs' damages theory is problematic and speculative as applied to the future, Plaintiffs do not seek damages pertaining to Defendants' future use of stolen customers—only past damages. DE 293 at 10. Defendants arguments are therefore rejected on this point.

With respect to whether Plaintiffs can show a relationship between the royalties sought and rights appropriated by the Defendants, this is an argument without legal significance. Defendants' argument is that they did not and do not enjoy the same rights that Plaintiffs' dealers enjoy and, as a result, Defendants should not be subject to the same royalty payments that Plaintiffs' dealers pay.[4] The Eleventh Circuit has expressly rejected this argument. In *Howard Johnson Co., Inc. v. Amir Khimani, Maralak, Ltd.*, the defendant argued that a hotel that used an infringing sign should not be subject to a royalty damages theory "because it did not enjoy all of the benefits of [the] franchise, such as participation in the national reservation network and a listing in the [franchise] directory." 892 F.2d 1512 at 1520. The Eleventh Circuit rejected this argument because the defendant "took advantage of perhaps the most significant benefit of [the] franchise. Customers selecting lodging at an unknown facility of a familiar franchise are likely to impute the characteristics of the franchise, including its general reputation, to the specific inn." *Id.* Here, Plaintiffs have alleged that Defendants "took advantage of . . . the most significant benefit" insofar as it is alleged that Defendants took Plaintiffs' customers away from Plaintiffs and engaged them

---

4 Defendants also argue that different dealers use different contractual agreements.

in binding contracts with themselves—all through intentional false pretenses. Defendants' arguments on this point are therefore rejected under *Howard Johnson*.[5]

Third and finally, with respect to whether Plaintiffs cannot show loss of sales as to any non-testifying customers, this argument is premature. Defendants' argument is that some sales agents in this case may only be shown to have falsely associated themselves with *other* companies—not Plaintiffs. Similarly, Defendants argue that some sales agents may not have falsely associated themselves at all. The Court declines to conclude that no reasonable juror could find that Defendants' sales agents violated the Lanham Act in this case for several reasons. First, all reasonable inferences in the record must be viewed in the light most favorable to Plaintiffs. Second, the record contains many references to non-testifying customers who complained about their services being transferred to Defendants. Third, the Court has recently issued several rulings on motions in limine that did not foreclose the possibility that Plaintiffs could introduce evidence at trial from non-testifying customers. *See, e.g.*, DE 369 at 4-5 ("The Court will permit ore tenus argument as to whether the jury may be informed of [non-testifying customer declarations] in some way other than the admission of the declarations into evidence."). Defendants' arguments on this issue simply raise questions of fact based upon what witnesses may or may not testify to at trial, what the evidence at trial will ultimately look like, and how a juror may view that evidence.[6] None of these arguments are appropriate for summary judgment—viewing all inferences in Plaintiffs' favor, Plaintiffs have substantial record evidence in support of their claims—and the Court rejects Defendants' arguments on this issue.

---

5 To the extent Defendants argue that sales representatives did not introduce themselves as Plaintiffs' representatives, that is a factual issue to be addressed at trial.

6 Defendants' other arguments related to their particular opinion on what the evidence at trial will show (such as *how* specific customers were misled) are rejected for the same reason. *See* DE 232 at 3; *e.g.*, *DOC v. Abril*, 969 So. 2d 201, 205 (Fla. 2007) (noting causation is typically a question for the finder of fact).

4. <u>The Application of Judicial Estoppel to Plaintiffs' Royalty Damages Theory</u>

Defendants next argue that Plaintiffs should be judicially estopped from bringing their royalties damages theory. For judicial estoppel to apply, there are three circumstances that a court must consider: (i) a party must take a position that is "clearly inconsistent" with a prior position, (ii) a party's second position must be such that, because a court accepted an earlier position, the court has been misled, and (iii) a party will derive an unfair advantage if not estopped. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). Here, prior to December 6, 2016, Plaintiffs took the position that they do not charge their dealers a royalty. Everyone appears to agree that this statement is true. On December 6, 2017, however, Plaintiffs provided an expert report to Defendants wherein Plaintiffs took the position that while they may not charge their dealers a royalty as that term is normally used, the fee structure with their dealers is such that Plaintiffs charge an effective royalty.[7] The Court finds that each of the three elements for judicial estoppel is not met in this case. First, the Court sees no "clearly inconsistent" position. The first position is undisputed truth, and the second position is a refined, more nuanced position taken after Plaintiffs engaged in careful study of their financials. Second, given the specifics of Plaintiffs' change in position and having undertaken a review of the court file, the Court does not believe that it has been misled. Plaintiffs' position has not "ma[d]e a mockery of the judicial system." *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1271 (11th Cir. 2004). Third, the Court does not conclude that Plaintiffs have derived an unfair advantage. Plaintiffs' expert opinion was disclosed on December

---

7 Stated briefly, Plaintiffs' expert analyzed the amount of revenue Plaintiffs' dealers retain and the amount of revenue Plaintiffs' dealers pay to Plaintiffs. DE 262-3. Although Plaintiffs' expert concluded that dealers facially pay 41 percent of their revenue to Plaintiffs, that amount was reduced in his ultimate conclusion (for a royalty amount to be charged to Defendants) to 25 percent to account for things such as the fact that Plaintiffs do not provide services (i.e., alarm monitoring) to Defendants. *Id.*

6, 2017.  Discovery remained open until January 16, 2017.[8]  As discussed more fully below, no motion to extend discovery was brought before this Court after Plaintiffs' damages theory was disclosed in early December.  For all of these reasons, the Court does not exercise its discretion to invoke the doctrine of judicial estoppel.

5.  <u>The Impact of Possible Sanctions on Plaintiffs' Royalty Damages Theory</u>

 In addition to Defendants' argument that Plaintiffs should be judicially estopped from arguing their royalty damages theory, Defendants also argue that Plaintiffs should be sanctioned under Federal Rule of Civil Procedure 37.  Even assuming a Rule 56 motion for summary judgment is a proper vehicle for bringing such an argument, Defendants' requests for sanctions under Rule 37 are without merit.  Plaintiffs' disclosures of its royalty damages theory, Defendants admit, were made prior to the deadline for discovery.  As to the content of those disclosures, Defendants take issue with the fact that Plaintiffs did not provide copies of its dealer agreements.  But that issue has already been litigated.  Defendants brought that issue to the attention of Magistrate Judge Hopkins *after* their motion for summary judgment was filed.  Judge Hopkins ruled that Plaintiffs were not required to turn over individual dealer agreements—which is the prejudice Defendants complain about in the instant motion—but instead Plaintiffs could provide Defendants with a boilerplate, standard dealer agreement.  Defendants appealed.  DE 277.  The undersigned affirmed.  DE 302.

No motion to extend discovery was filed prior-to or subsequent-to the undersigned's decision to affirm.  Defendants' decision not to move for additional discovery warrants discussion. Defendants make much of the shift in Plaintiffs' damages theory that Plaintiffs disclosed in early

---

8 To the extent Defendants argue this issue in the context of Plaintiffs' turnover of specific dealer agreements (with which to scrutinize the expert report), that issue has already been litigated and Magistrate Judge Hopkins' decision on that issue was affirmed by the undersigned.  DE 302.  This issue is addressed more fully below.

December. That disclosure was timely. Discovery was on-going. Defendants did not move, at any time, for additional time to conduct discovery on Plaintiffs' royalty damages theory. Instead of moving for additional time, Defendants filed three separate motions in limine to exclude the experts supporting Plaintiffs' damages theory. Additionally, Defendants filed approximately ten motions in limine targeted towards evidence that Plaintiffs' expert reports were premised upon. Finally, Defendants filed the instant motion for summary judgment, which seeks to exclude Plaintiffs' royalty theory on numerous grounds. In summary, Defendants have moved to exclude Plaintiffs' damages theory pursuant to approximately twenty different legal theories. One of those theories is the timeliness of Plaintiffs' disclosures. In light of Defendants' extensive motion practice to exclude Plaintiffs' damages theory from trial entirely, in light of Plaintiffs' timely disclosure of that theory, in light of Defendants' decision not to move for additional time to prepare and defend against Plaintiffs' theory, and in light of the Court's own review of the docket, record, and history of this case, Court is persuaded that Defendants' alleged prejudice is more about litigation tactics and less about actual prejudice for defense at trial. The Court exercises its discretion by declining to award any sanctions on this matter under Rule 37. *See Carlucci v. Piper Aircraft Corp., Inc.*, 775 F.2d 1440, 1447 (11th Cir. 1985) (noting that sanctions under Rule 37 are within the discretion of the trial court).

For all of the foregoing reasons, Defendants' request to exclude Plaintiffs' royalty damages theory from trial as a matter of law is denied.

### B. Plaintiffs' Request for Compensatory Damages (Determined by Market Value and Reinstallation Costs)

Defendants next argue that Plaintiffs should not be permitted to collect compensatory damages for what Defendants call "unknown customers" because such damages are speculative.

14

Defendants also argue that a market valuation of Plaintiffs' lost accounts is improper. Each of these points is considered in turn.

1. Plaintiffs' Intent to Seek Damages for "Unknown Customers"

Plaintiffs intend to argue to the jury that a damages multiplier should be used in this case. This multiplier is intended by Plaintiffs to extrapolate their actual damages from their known damages. The basis for Plaintiffs' use of a damages multiplier is the well-known and unremarkable proposition that customers who complain are vastly outnumbered by customers who do not complain. This principle of marketing and economics has been recognized by the Eleventh Circuit in Lanham Act cases. *See Ambrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1544 (11th Cir. 1986) ("It is likely that many consumers who were confused never realized they had been confused and that many of those who did realize they had been confused chose not to spend the time to register a complaint with a faceless corporation."). Defendants attack Plaintiffs' use of a multiplier by arguing the multiplier is speculative and the multiplier usurps the role of the Court.

With respect to speculation, Plaintiffs have expert testimony in support of their damages multiplier, and this Court has already denied multiple motions in limine that sought to exclude, directly and indirectly, that expert. In light of Plaintiffs' evidence, this is a matter for the jury's consideration. To the extent the evidence at trial is insufficient to support a damages multiplier, that is an issue properly raised at trial—not on summary judgment.

With respect to the Court's role, Defendants argue this Court should not permit Plaintiffs' use of a damages multiplier because such a multiplier would usurp the role of the Court. Defendants' argument is based upon 15 U.S.C. § 1117(a). This argument has no legal relevance. Section 1117(a) permits this Court to increase a judgment, according to the principles of equity, for

any sum *above the amount the jury finds as actual damages*.  Plaintiffs' intention to argue in favor of a known-damages multiplier is directed towards their own assessment of what their *actual* damages are.  The jury will assess Plaintiffs' evidence and determine whether a multiplier is needed to compensate Plaintiffs for their actual damages.  Section 1117(a) permits this Court *in hindsight* and with *a full view of the evidence at trial* to adjust the jury's verdict so as to provide Plaintiffs with full compensation for their loss.  *Id.*  Defendants' argument under this section, therefore, is entirely without relevance and, moreover, is without on-point legal authority.

2.  <u>The Market Valuation of Plaintiffs' Lost Accounts</u>

Defendants next argue that Plaintiffs should not be permitted to value their customer accounts at market value because, Defendants contend, Plaintiffs have never sold a customer account on the open market.  This argument lacks merit on summary judgment for three reasons.  First, Plaintiffs have substantial evidence in the record in support of the market valuation of their assets.  Second, the use of market valuations is well established for determining lost profit damages.  *See, e.g.*, *Nat'l Inds., Inc. v. Sharon Steel Corp.*, 781 F.2d 1545, 1547 (11th Cir. 1986) ("Damages for lost profits will not be allowed unless there is 'some standard, such as market values, or other established data, by reference to which the amount may be satisfactorily ascertained.'").  Third and most importantly, Defendants' argument exhibits a willful blindness to what Plaintiffs' damages theory actually is.  Plaintiffs are not alleging that they were damaged by virtue of a lost opportunity or some other uncertain future act.  Plaintiffs are not even alleging that they had an asset that was destroyed.  Plaintiffs have alleged that Defendants *took* their customers from them and appropriated the income stream from those customers for their own.  While Plaintiffs may not have elected to sell their customer accounts on the open market in the past, what

Plaintiffs have alleged is that, essentially, Defendants have *forced* a *sale* of the customer accounts by stealing them. What Plaintiffs desire is the market value of the forced sale.

Defendants cite to three cases as authority on this matter—all of which stand for the proposition that damages cannot be based upon a speculative act. DE 232 at 18. If Plaintiffs succeed in proving their case to the jury, however, there is no speculative act. Stated another way, if the jury concludes that Defendants took customer accounts from Plaintiffs through deception, there will be no speculation or question over whether Defendants have, essentially, forced a transfer of a customer account from Plaintiffs to Defendants. Defendants' case law will therefore either be rendered irrelevant or moot by the jury's finding on liability in this case, and Defendants certainly cite no authority for the proposition that when there is a forced sale of an asset the asset cannot be valued at market value. Such a proposition would defy logic. Defendants' arguments on this point are rejected.

For all of the foregoing reasons, the Court denies Defendants' motion to exclude Plaintiffs' request for compensatory damages from trial as a matter of law.

### C. Plaintiffs' Request for Goodwill and Reputational Injury Damages

Defendants argue that Plaintiffs' damages for loss of goodwill and reputational injury are prohibited as a matter of law. Defendants' position is based upon two actions of Plaintiffs: Plaintiffs did not provide a calculation of those damages in their disclosures in this case and Plaintiffs did not retain an expert on this topic. In light of these two facts, Defendants contend that they have been prejudiced from preparing a defense. For support, Defendants rely upon two cases. The first is *Mee Industries v. Dow Chemical Co.*, 608 F.3d 1202 (11th Cir. 2010) and the second is

*Rosenberg v. DVI Receivables, XIV, LLC*, No. 12-CV-22275, 2012 WL 5198341 (S.D. Fla. Oct. 19, 2012). Each case is discussed in turn.

In *Mee Industries*, the Eleventh Circuit considered the circumstance where a plaintiff's initial disclosure did not include "loss of goodwill" as a category of damages. 608 F.3d at 1221. In discovery, the plaintiff was asked to identify the types of damages it would seek. *Id.* The plaintiff did not identify loss of goodwill as one of those types of damages. *Id.* The first time the plaintiff raised the issue of loss of goodwill damages was in the pretrial stipulation. *Id.* The trial court, noting the plaintiff's long delay in disclosing loss of goodwill damages, excluded the damages theory at trial. *Id.* at 1222. The Eleventh Circuit affirmed. *Id.*

*Mee Industries* is not directly applicable to the instant case. Here, Plaintiffs disclosed their intent to seek loss of goodwill and reputational damages as early as September 18, 2015. DE 35-1 at 15. While Plaintiffs initially indicated they would obtain expert testimony on this issue, Defendants were on notice of Plaintiffs' intent to seek these damages very early in the case. Defendants have not provided this Court with concrete information on how it was impossible for them to prepare a defense to Plaintiffs' damages without the benefit of an expert report by Plaintiffs or a proffered formula by Plaintiffs. What the Court gleans from the record on this issue is that Defendants elected to wait on Plaintiffs to provide an expert report. Plaintiffs never did so. Whether that precludes Plaintiffs from seeking goodwill and reputational damages is an issue addressed below, but the Court fails to see how Plaintiffs' election not to obtain expert testimony *prevented* Defendants from preparing a defense on this issue such that Plaintiffs' theory must be excluded entirely on the grounds of prejudice. *Mee Industries* was a case about delayed disclosure and resulting prejudice. There was no delayed disclosure in this case and Defendants' arguments

under *Mee Industries* are rejected. Furthermore, Defendants' contentions of surprise are not entirely credible. In their reply, Defendants state that: "In its February 17, 2017 Opposition, ADT disclosed *for the first time* its 'measure' of damages to its reputation and goodwill as $150 to $160 million, the amount it allegedly spends on marketing each year. . . . Exclusion under Rule 37(c) is automatic because ADT's failure to disclose is not harmless error or substantially justified." (emphasis in original). DE 300 at 8. What Defendants omit from their reply above is that Plaintiffs' expenditures of $150 to $160 million on advertising was information revealed long ago—this was testimony during the first trial between the parties in *ADT I*. DE 294-4 at 4. Expenditures on advertising and marketing are well known to be relevant to a damages determination of loss of goodwill and reputational damages. *See* discussion below on *Skydive Arizona*. Regardless of when that information was officially disclosed in *this* case, the Court fails to see how the disclosure of that information was a surprise.

Defendants also cite to *Rosenberg v. DVI Receivables, XIV, LLC*, No. 12-CV-22275, 2012 WL 5198341 (S.D. Fla. Oct. 19, 2012). This citation corresponds to a district court order that appears to have resulted from a motion in limine—not a motion for summary judgment. In *Rosenberg*, the district court, citing *Mee Industries*, stated that an expert is required to compute damages for loss of goodwill for a corporation. 2012 WL 5198341, at *5. But *Mee Industries* does not say that. *Mee Industries* merely stated, in what appears to be dicta, that complex financial computations require expert testimony. *Mee Industries*, 608 F.3d at 1222. The persuasive value of *Rosenberg* is complicated by the fact that *Rosenberg* was appealed and reversed on irrelevant grounds. *See Rosenberg v. SVI Receivables XIV, LLC*, 818 F.3d 1283 (11th Cir. 2016) (reversing the district court's Rule 50(b) order on the grounds that the district court improperly applied the

Federal Rules of Bankruptcy Procedure).  Regardless of the persuasive value of *Rosenberg*, the Court concludes that the case stands for the unremarkable proposition that complex financial calculations require expert testimony.  The more germane question before the Court, however, is whether damages to corporate goodwill *must* be premised upon complex financial calculations because it is undisputed that no expert on this issue will be presented to the jury.  On this issue, Defendants are silent outside of their citation to *Rosenberg*.

Plaintiffs are not silent.  Plaintiffs cite to *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105 (9th Cir. 2012).  In *Skydive*, the Ninth Circuit considered a case with corporate goodwill damages at length.  The Court noted "[The Lanham Act] demands neither empirical quantification nor expert testimony to support a monetary award of actual damages; many sources can provide the requisite information upon which a reasonable jury may calculate damages." *Id.* at 1113.  To that end, "In measuring harm to goodwill, a jury may consider a plaintiff's expenditures in building its reputation in order to estimate the harm to its reputation after a defendant's bad acts." *Id.* at 1112.  In *Skydive*, the jury heard evidence on the quality of the plaintiff's reputation and the amount of money the plaintiff spent developing and advertising its business. *Id.*  The appellate court rejected the defendant's contention that the failure to give the jury a proffered mathematical computation precluded damages to corporate goodwill because "counsel [did not ask] the jury to conjure the damages out of the vapor.  To the contrary, throughout the trial, [the plaintiff] presented to the jury ample evidence providing the original value of [the plaintiff's] goodwill and the scope and depth of [the defendant's] harm to [the plaintiff's] reputation. . . .  [The plaintiff] then presented to the jury multiple declarations and witness testimony providing that the customers were very angry with, and blamed [the plaintiff] for, problems caused by [the defendant.]" *Id.*  In

their reply, Defendants do not respond to *Skydive* or the reasoning of the *Skydive* court.  The Court

finds *Skydive* persuasive insofar as this matter is an evidentiary issue.  In the event Defendants seek

to argue that Plaintiffs' evidence at trial is insufficient to support goodwill or reputation damages

(or that the jury's award is excessive), Defendants may bring the issue before the Court.  This is

not, however, a matter for summary judgment.  Defendants' motion to exclude Plaintiffs' goodwill

and reputational damages from trial as a matter of law is denied.

### D.  Plaintiffs' Request for Punitive Damages

Defendants next argue that Plaintiffs' claim for punitive damages fails as a matter of law.

Defendants' position is that Plaintiffs cannot point to affirmative evidence that would support an

award of punitive damages.  Punitive damages are permissible for unfair competition claims

(Plaintiffs' Count II) that are based on "intentional misconduct or gross negligence."  Fla. Stat. §

768.72(2).  Plaintiffs' position is that they have evidence Defendants intentionally engaged in

deceptive sales practices.  Although Defendants characterize Plaintiffs' proffered evidence as

merely "aggressive sales techniques," for the purposes of summary judgment the Court does not

agree.  *See* DE 300-1 at 9 ("The only 'affirmative evidence' ADT identifies in its Opposition are

two declarations/affidavits that suggest use of aggressive sales techniques.").  A former employee

of Defendants has declared under penalty of perjury:

> 4. During my employment at AP, I received training from my superiors, including
> specifically the President and CEO of AP, Adam Schanz, and I was asked and
> encouraged to use deceptive and misleading sales tactics toward potential
> customers for the purpose of having those customers enter into alarm service
> contracts with AP. I also witnessed other AP sales representatives and managers
> use deceptive and misleading sales tactics.
>
> 5. I witnessed Adam Schanz and Jake Palmer, and I was specifically trained by
> Adam Schanz and Jake Palmer, to approach a potential customer who already had
> an alarm system in their home asking them to "upgrade their system" without first

informing them of the actual affiliation with AP, indeed training me to say that I was from General Electric (GE), among other deceptive tactics. This likely led the customer to believe that the AP representative worked for the company who installed their existing (non-AP) alarm system and led the customer to allow the AP representative into their home.

7. At the completion of the sales process, AP requires that the new customers speak with a separate AP representative by telephone where the AP representative asks the customer a series of questions for the purposes of confirming that the customer understands the terms of the AP alarm service contract, that AP is not affiliated with the customer's existing alarm company, and that AP is not responsible for cancelling the customer's existing alarm service. I, and other AP sales representatives, were taught and instructed by Adam Christian, Jake Palmer and other AP managers to instruct the customer to say either "yes" or "no" to questions depending on the appropriate answers the customer through this telephone call. We were trained to begin by reviewing with the customer the questions that will be asked and coaching them how to answer and to say "yes" or "no" to specific questions. During the phone call, we were instructed to stand near the customer and coach the customer to say "yes" or "no" to each question they are asked regardless of the question or the truth of answer.

9. I witnessed in the Summer months of 2013 Adam Schanz and Jake Palmer teach in a training session how to be aggressive to collect payments from an elderly woman, even after she said "no" and that she had been advised by her children not to give her bank information to anyone.

DE 292-2. Plaintiffs also cite to an affidavit of a former employee of Defendants:

6.    Schanz and AP managers also trained AP's sales staff on how to get their foot in the door on a sales call.   For customers with existing systems, we were taught to distract the homeowner from realizing we were with an alarm company separate and distinct from their existing alarm/monitoring company.   When greeting a homeowner, we were also taught to flash our badge quickly and immediately start the sales pitch.   In trainings, we were told to tell customers that we were "with GE" as another means to avoid focus on who we actually worked for.   AP training emphasized the GE name because it was highly recognizable and we wanted to imply an existing relationship with the homeowner.   AP sales representatives were taught to point at the GE emblem on the company shirt to reinforce the affiliation with GE and to refer to the GE security systems as "our systems."   To the best of my knowledge, neither Schanz nor any of his companies had any relationship with GE or any other alarm monitoring equipment

8.    I also received training by McCartney and Schanz to tell homeowners during my sales presentation that I was there to "upgrade" existing alarm equipment for free.   The pitch that the upgrade was "free" was misleading, because the new equipment was only provided free of charge under certain circumstances and only if a new contract was signed with Alarm Protection.   McCartney would casually ask the homeowners to put the AP sign out in their front yard for 5 years, but he would not explain that the contract's actual length was 5 years.   The AP contracts were typically drafted as 60 month contracts, with a 60 month auto-renewal feature.

DE 203-3.  On summary judgment the Court must view all inferences in Plaintiffs' favor.  The evidence cited by Plaintiffs, together with other ample evidence in the record, is evidence upon which a reasonable juror could infer actions, on behalf of Defendants, worthy of punitive damages. Defendants' motion to exclude Plaintiffs' request for punitive damages as a matter of law is denied.

### E. Plaintiffs' Request for Attorney's Fees

Defendants' final argument on summary judgment is that Plaintiffs cannot recover attorney's fees for their unfair competition claim as a matter of law. *See Price v. Tyler*, 890 So. 2d 246, 251 (Fla. 2004) ("[T]he general rule is that attorney's fees incurred while prosecuting or defending a claim are not recoverable in the absence of a statute or contractual agreement authorizing their recovery."). Plaintiffs do not respond to this argument, and the Court grants Defendants their requested relief pursuant to Local Rule 7.1(c).

## IV. CONCLUSION

For all of the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion for Partial Summary Judgment [DE 232] is **GRANTED IN PART AND DENIED IN PART**. Defendants' Motion is **GRANTED** as to Plaintiffs' request for attorney's fees for Plaintiffs' unfair competition claim and **DENIED** in all other respects.

**DONE and ORDERED** in Chambers, Fort Pierce, Florida, this 17th day of May, 2017.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record